## CHRISTIAN v. SMITH et al.

(Circuit Court, S. D. New York. September 4, 1900.)

EQUITY—SUIT FOR ACCOUNTING—GROUNDS OF JURISDICTION.

A bill alleged that complainant and defendants were appointed by the bondholders of an insolvent railroad company a committee to have charge of proceedings for the foreclosure of the mortgage and the reorganization of the company; that it was agreed that the members of the committee should be fully compensated for their services and expenses, and a fund was raised and placed in its hands to pay the expenses of the proceedings and such compensation; that it was further agreed that the committee itself should compensate its members by justly apportioning between them the available surplus of such fund; that defendants, who constituted a majority of the committee, had apportioned a sum to complainant which was less than full compensation, and less than the amount of the fund remaining in their hands warranted, but that they refused to make an accounting as to such fund, or to give him any information on the subject. *Held*, that such bill stated a good cause of action for an accounting.

In Equity. On demurrer to bill.

John S. Wise, for complainant.

Miller, Peckham & Dixon, for defendants.

TOWNSEND, District Judge. Demurrer to amended bill for an accounting originally filed by Edward D. Christian, who died, and whose executrix has revived the suit. It appears from the bill that in August, 1886, the Seattle, Lake Shore & Eastern Railway Company, a corporation of the state of Washington, mortgaged its railroad to the Union Trust Company of New York to secure the payment of an issue of bonds to the amount of $5,675,000; that in 1893 the company defaulted the interest upon said bonds; that thereupon the bondholders, by written agreement, appointed complainant's decedent and the defendants trustees and agents, under the title of a committee, to take such measures as might appear to them to be judicious for the protection of the bondholders; that the whole issue of bonds was deposited with the Manhattan Trust Company; that the Union Trust Company foreclosed the mortgage; that the original agreement was modified on March 25, 1896, so that the previous acts of the committee were ratified, and they were authorized to bid in the property at the foreclosure sale for the bondholders, and to organize two new corporations, and take various other measures for the preservation of said property; and it was further agreed that, in case of the purchase of said property, a voting trust should be created, and that defendants Armour, White, and Sage should be voting trustees, with extensive powers.

Paragraphs 8 and 9 of the bill allege as follows:

"Eighth. In the making of the agreement aforesaid for the foreclosure and reorganization, it was contemplated and understood between the parties thereto that the committee would have to perform great and protracted labor, involving onerous and delicate responsibilities, for all of which it was intended and provided that the committee should be fully compensated, and suitable provision was made therefor in the said agreement, but the amount of compensation was not fixed and stated in the agreement, because the just amount could only be determined by future events and ultimate results. Nor

was any personal liability assumed in the premises by individual bondholders. The only recourse for compensation was and is against the fund in the hands of the committee under the said agreement. As security for such payment of just compensation and for their expenses the committee had a lien and charge upon all the securities placed in their hands under the said agreement, and upon the proceeds of such securities. Moreover, in order to raise a fund to provide for part, at least, of such compensation and expenses of the foreclosure and reorganization, by the terms of said agreement each depositor of a bond of $1,000 was required to pay, as an assessment thereon, the sum of $50. The committee received from such assessments in the aggregate $273,000."

Paragraph 10 alleges, inter alia, as follows:

"Tenth. Your orator avers that, as a member of such reorganization committee, he had at all times, and now has, a right to an account from the defendants, jointly and severally, and whether as members of the said committee, or as voting trustees, acting with members of such committee, in respect to all moneys or funds coming into their hands, in order, among other things, that your orator might receive his aforesaid just compensation out of the funds or money in the defendants' hands justly applicable thereto; and your orator has often demanded of the defendants such an accounting, but, nevertheless, the defendants have always hitherto, and still do, refuse to render any account to your orator, or give him any information in the premises. In this behalf your orator avers that on or about the 30th day of July, 1896, your orator received, out of the fund applicable thereto, twelve thousand and five hundred dollars in part payment of his services aforesaid, and on or about the 28th day of January, 1898, he received, through the defendants, the further sum of $7,225.15, as additional part payment. The defendants then pretended and alleged that the said last-mentioned sum so paid was your orator's full and equal share of all that remained applicable to the payment to members of the said committee of reorganization in respect of their services. Your orator, upon information and belief, alleges that the said statement and pretense was and is wholly untrue; that the defendants, in fact, still have in their possession, or under their control, money or funds justly applicable to the payment to your orator of the full amount of thirty-five thousand dollars so due to him, as aforesaid, unless the defendants have fraudulently appropriated to their own use, or made other unlawful disposition thereof, in which case, as your orator is advised, the defendants are liable to your orator notwithstanding."

It is thus alleged that it was agreed that complainant's decedent should be fully compensated; that his services were worth $35,000; that he has been refused an account or any information in the premises, and the full amount of $35,000 applicable to his payment is under the control of defendants, unless fraudulently appropriated. "It was * * * agreed that the said committee itself should justly apportion the available surplus funds to and among the respective members." An apportionment made by a majority of the committee, while refusing to the minority any information as to the amount to be apportioned, and therefore all opportunity to properly discuss the question in a meeting of the committee, is not a just apportionment by the committee. The demurrer is overruled.